**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROCCO DUARDO, | Civil Action No. 22-6779 (SDW) (JRA) |
| Plaintiff, | **OPINION** |
| v. | July 10, 2023 |
| CITY OF HACKENSACK, MAYOR JOHN LABROSSE, DEPUTY MAYOR DAVID SIMS, DEPUTY MAYOR KATHLEEN CANESTRINO, CITY MANAGER VINCENT CARUSO, COUNCILMEMBER LEONARDO BATTAGLIA, and COUNCILMEMBER STEPHANIE VON RUDENBORG, | |
| Defendants. | |

**WIGENTON**, District Judge.

Before this Court is Defendants' City of Hackensack, Mayor John Labrosse, Deputy Mayor David Sims, Deputy Mayor Kathleen Canestrino, City Manager Vincent Caruso, Councilmember Leonardo Battaglia, and Councilmember Stephanie Von Rudenborg's (collectively, "Defendants") Motion to Dismiss (D.E. 4) Plaintiff Rocco Duardo's ("Plaintiff") Complaint (D.E. 1 ("Compl.")) for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337. Venue is proper under 28 U.S.C. §1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons discussed below, Defendants' Motion to Dismiss is **GRANTED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

    A.    **Parties**

Plaintiff Rocco Duardo is a police officer for the City of Hackensack Police Department ("HPD"). (Compl. ¶ 1.) Defendants are the City of Hackensack ("the City") and employees of the City's government: Mayor John Labrosse, Deputy Mayor Kathleen Canestrino, former Deputy Mayor David Sims, City Manager Vincent Caruso, and Councilmembers Leonardo Battaglia and Stephanie Von Rudenborg. (*Id*. ¶¶ 2–8; D.E. 4-2 ¶ 25.)

    B.    **Prior Related Lawsuits**

Prior to filing this lawsuit, Plaintiff filed two related lawsuits in this District against the City and individuals who are not party to this lawsuit. In 2009, Plaintiff and other HPD officers filed a lawsuit against the City and four individual HPD officers which settled in 2013. (*See* D.N.J. 09-cv-0645, D.E. 1, D.E. 86.) In April 2017, Plaintiff and other HPD officers sued the City, three HPD Captains who were not parties to the 2009 lawsuit (Frank Aquila, Tim Lloyd, and Peter Busciglio), and former City Managers David Trost and Theodore Ehrenburg. (D.N.J. 17-cv-2308, D.E. 4 ¶¶ 14–30.) In his Amended Complaint in the 2017 lawsuit, Plaintiff alleged that the defendants retaliated against him for participating in the 2009 lawsuit and for filing the initial complaint in the 2017 lawsuit. (*Id*. ¶¶ 142–182.)

On October 18, 2022, Judge Martini granted summary judgment to the defendants in the 2017 lawsuit, dismissing Plaintiff's claims that the individual defendants had retaliated against him for his participation in the 2009 lawsuit and for filing the initial complaint in the 2017 action in violation of the First Amendment, and dismissing his New Jersey Civil Rights Act ("NJCRA") retaliation claim against the City. *See Duardo v. City of Hackensack*, No. 2:17-CV-2308-WJM-ESK, 2022 WL 10487207, at *14, *17 (D.N.J. Oct. 18, 2022). Plaintiff consented to the dismissal

of his First Amendment retaliation claim against the City. *Id*. at *10. He did not appeal. (*See* D.N.J. 17-cv-2308.)

C. Facts[1]

Plaintiff has been a police officer for the HPD since 2004, with some interruptions in his employment stemming from disciplinary proceedings described herein. (Compl. ¶¶ 1, 12.) Throughout these disciplinary proceedings, Plaintiff has made relentless efforts to regain and now maintain his employment as an HPD officer, and he believes that Defendants' conduct described herein was intended as retaliation for his doing so. (*Id*. ¶¶ 57, 90, 107, 114, 120, 125, 132, 135.)

### i. Actions Related to the 64 Prospect Investigation

In December 2016, Plaintiff and six other HPD officers investigated a potential narcotics and weapons incident at 64 Prospect Avenue, in Hackensack ("64 Prospect") (*Id*. ¶ 13.). Several months later, an anonymous letter was received by HPD's Internal Affairs Division ("IA") which alleged that the officers who investigated 64 Prospect acted improperly. (*Id*. ¶¶ 14–15.) This letter triggered an IA investigation which was conducted by Police Captain Busciglio. (*Id*. ¶¶ 15–16.) Defendants were aware that the integrity of Busciglio's investigation was compromised because it was tainted by conflicts of interest, and it violated New Jersey Attorney General Guidelines which prohibit police departments from conducting IA investigations that could potentially lead to criminal charges until a prosecutor's office determines that criminal charges will not be pursued. (*Id*. ¶¶ 17–28, 32–34, 35–37, 45.) Former City Manager Ehrenburg took an active role in the 64 Prospect IA investigation, including meeting with the Bergen County Prosecutor's Office in an effort to have Plaintiff and the other officers criminally charged. (*Id*. ¶ 30.) While this

---

[1] For purposes of the present Motion, the facts are drawn from the Complaint and accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

investigation was ongoing, Plaintiff and two other officers involved filed the 2017 lawsuit against Ehrenburg, Busciglio, the City, and others. (*Id*. ¶¶ 29, 35.)

On May 9, 2017, Defendants filed administrative charges against Plaintiff and the other officers in connection with the 64 Prospect IA investigation, in the form of a Preliminary Notice of Disciplinary Action ("PNDA"). This PNDA ("PNDA-1") sought Plaintiff's termination and suspended him without pay pending a final decision. (*Id*. ¶ 39.) Plaintiff requested a departmental hearing, or *Loudermill* hearing, to contest the PNDA-1 charges. (*Id*. ¶ 40.)[2] On May 29 and May 31, 2017, the first two of four *Loudermill* hearings were held and presided over by South Brunswick Chief of Police Raymond Hayducka ("Chief Hayducka"). (*Id*. ¶ 41.) On June 1, 2017, Chief Hayducka reinstated Plaintiff to paid status pending the outcome of the PNDA-1 hearings, and Busciglio completed the IA investigation the same day, recommending that the charges be sustained. (*Id*. ¶¶ 43–44.) The City terminated Chief Hayducka's services and retained Denis F. Driscoll, Esquire, to serve as the hearing officer for the remaining two PNDA-1 *Loudermill* hearings. (*Id*. ¶ 44.)

On January 31, 2018, Driscoll recommended that the PNDA-1 charges be sustained and the officers' employment be terminated. (*Id*. ¶ 47.) Plaintiff's employment was terminated on February 9, 2018. (*Id*.) Plaintiff appealed Driscoll's termination decision to the Office of Administrative Law ("OAL"). (*Id*. ¶ 50.) Approximately one year later, on February 8, 2019, Administrative Law Judge ("ALJ") Susan Guerrero issued a decision recommending that Plaintiff's termination be vacated because his actions were insufficiently severe to warrant termination. (*Id*. ¶¶ 50, 52–53.) On April 8, 2019, the New Jersey Civil Service Commission ("CSC") rendered its final administrative decision adopting Judge Guerrero's findings in large part

---

[2] *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

4

and ordering Plaintiff's immediate reinstatement, back pay, benefits, and seniority for the period after the imposition of a 6-month suspension up to the date of his reinstatement.  (*Id.* ¶ 54.)  Defendants did not comply with the CSC's April 8, 2019, decision; they appealed the decision to the New Jersey Appellate Division.  (*Id.* ¶¶ 55–56.)

While this appeal process was ongoing but after Driscoll's termination decision was issued in January 2018, Ehrenburg approved a press release stating that Plaintiff and the other officers involved in the 64 Prospect investigation "betrayed their oath and brought dishonor to the [HPD]" and that terminating them was justified.  (*Id.* ¶ 49.)  After the CSC's decision was issued in April 2019, Defendant Labrosse made statements to the press criticizing these officers as "unfit for duty" and stating that, despite the CSC's decision, the City had no plans to return Plaintiff to active duty.  (*Id.* ¶¶ 59–60.)

In June 2020, at a public City Council meeting attended by all of the individual defendants, Labrosse stated that the City was "doing [its] job to keep these bad cops out," and that the Attorney General had sent these "crooked, dirty cops" back to the City and tried to force the City to take them back.  (*Id.* ¶¶ 76–77.)  Ehrenburg stated that Plaintiff had broken the law, labeled him a "disgrace to the badge," and made comments suggesting that he had committed theft and used excessive force.  (*Id.* ¶¶ 61, 63, 65.)  Ehrenburg also stated that the 64 Prospect residence was occupied by an African American, knowing this to be false, and suggested that the officers were racist.  (*Id.* ¶¶ 71–74.)  These statements, which were made with intent to humiliate Plaintiff, were reprinted in online news sources and impeded Plaintiff's ability to obtain other employment.  (*Id.* ¶¶ 78–80, 83.)  The individual Defendants knew these statements were false but did not retract or object to these statements which interfered with Plaintiff's ability to obtain employment and caused his family financial hardship.  (*Id.* ¶¶ 87–88.)

On October 21, 2021, the Appellate Division affirmed the CSC's April 2019 decision ordering Plaintiff's reinstatement and payment of back pay. (*Id*. ¶¶ 54, 115.) On May 20, 2022, the New Jersey Supreme Court denied Defendants' petition for certification. (*Id*. ¶ 116.) In response to the Supreme Court's ruling, a spokesperson for the City stated that City officials continue to believe that Plaintiff's termination was merited based on his proven misconduct. (*Id*. ¶ 117.)

### ii. Actions Related to the Bergen County Prosecutor's Office Letter

While the 64 Prospect IA investigation was ongoing, Plaintiff was the subject of a second IA investigation by Busciglio stemming from a letter received on July 20, 2017, from the Bergen County Prosecutor's Office ("BCPO"). (Compl. ¶¶ 91–95.) This letter stated that, as a result of Plaintiff's involvement in the 64 Prospect investigation, the BCPO would dismiss a number of criminal cases in which Plaintiff was involved. (*Id.* ¶ 91.) On September 1, 2017, Ehrenburg issued a second PNDA ("PNDA-2") to Plaintiff which sought his termination and contained charges of incapacity, incompetence, inefficiency, or failure to perform duties, inability to perform duties and other sufficient cause. (*Id.* ¶ 95.) On September 27, 2019, Busciglio sustained the PNDA-2 charges which effectively resulted in a second termination of Plaintiff's employment. (*Id*. ¶ 97.)

Plaintiff appealed this second termination decision to the OAL, and the PNDA-2 OAL hearings took place throughout June, July, and August 2019 in front of ALJ Andrew M. Baron. (*Id.* ¶¶ 96, 98.) Following these hearings, Judge Baron recommended dismissal of the PNDA-2 charges against Plaintiff in their entirety, his immediate reinstatement, and an award of back pay and benefits. (*Id.* ¶ 99.) In a written decision issued on June 10, 2021, Judge Baron determined that Defendants had violated Plaintiff's due process rights under federal and state law by issuing

the PNDA-2 charges, which were completely unsubstantiated, and by labeling Plaintiff a "Brady" officer. (*Id*. ¶¶ 100–06.) On July 21, 2021, the CSC adopted Judge Baron's decision. (*Id*. ¶¶ 109–12.) The City requested a stay of the CSC's decision regarding the PNDA-2 charges which was denied. (*Id*. ¶ 111.) The City appealed the CSC's decision to the Appellate Division, but the Appellate Division has not yet issued a decision. (*Id*. ¶ 113.)

### iii. Plaintiff's Gradual Reinstatement

Following ALJ Baron's June 10, 2021, PNDA-2 decision, the City placed Plaintiff back on its payroll but did not reinstate him as a police officer or pay him back pay. (*Id*. ¶ 108.) The City also did not reinstate him to the City's health insurance plan until September 2021, despite repeated inquiries from his counsel, which was contrary to custom and practice. (*Id*. ¶ 119.) In October 2021, the City's attorney advised Plaintiff that he was required to submit to physical and psychological examinations as a condition of his reinstatement to active duty, though this is not required by any City or departmental rule or policy. (*Id*. ¶¶ 121–23.) Plaintiff and his counsel contested the psychological examination and Defendants ultimately relented on that requirement, but Plaintiff submitted to and passed the physical fitness examination. (*Id*. ¶ 124.)

Plaintiff was finally returned to active duty with the HPD on or about December 13, 2021. (*Id*. ¶ 126.) He was required to complete training to familiarize himself with the HPD's updated rules and regulations. (*Id*.) He then expected to be returned to patrol duty, but Defendant Caruso assigned Plaintiff to desk duty at City Hall and the Health Department—a role usually given to part-time officers—despite the facts that the HPD's patrol division was short staffed and the Officer in Charge had informed Caruso that patrol would be the best fit for Plaintiff. (*Id*. ¶¶ 53, 127.) In February 2022, Caruso reassigned Plaintiff to patrol duty but with a field training officer, which is typically a role for rookie HPD officers immediately after completing police academy

training.  (*Id*. ¶¶ 129–30.)  Plaintiff has been permitted to patrol alone since March 2022.  (*Id*. ¶ 131.)

As of November 2022, when Plaintiff filed his Complaint, the City had refused to pay Plaintiff's back pay despite the aforementioned orders from the CSC, Appellate Division, and Supreme Court, as well as a more recent order from the CSC directing the City to pay his back pay no later than November 10, 2022.  (*Id*. ¶¶ 133–34.)  However, Plaintiff concedes that Defendants have since paid him his back pay in January 2023.  (D.E. 5 at 7.)

   C. **Procedural History**

Plaintiff filed the instant lawsuit on November 28, 2022, asserting that defendants (1) violated his rights under Article 1 of the New Jersey Constitution and the NJCRA (Count I); (2) retaliated against him for engaging in activity protected by the First Amendment, in violation of 42 U.S.C. § 1983 (Count II);  and (3) deprived him of property and liberty interests without due process guaranteed by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983 (Counts III and IV).  (Compl. ¶¶ 136–170.)  On January 24, 2023, Defendants moved to dismiss the Complaint, and the parties have completed briefing.  (D.E. 4, 5, 7.)

**II.** **LEGAL STANDARD**

An adequate complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim for relief must be "plausible" and a complaint will not survive a motion to dismiss if the "well-pleaded facts do not permit the court to infer more than the mere possibility" of defendant's liability.  *Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (noting that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief"). Insofar as a complaint alleges fraud or misrepresentation, it "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

Plaintiff asserts claims under 42 U.S.C. § 1983 and its state-law analogue, the NJCRA. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing that (1) he was deprived of "rights, privileges, or immunities" afforded him under the United States constitution or other federal law, and (2) "the conduct complained of was committed by a person acting under color of state law." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011); *see* 42 U.S.C. § 1983.

While there are some "distinct differences" between § 1983 and the NJCRA, the New Jersey Supreme Court has recognized that the NJCRA was "modeled off" of § 1983 and that "[t]he interpretation given to parallel provisions of § 1983 may provide guidance in construing" the NJCRA. *Tumpson v. Farina*, 95 A.3d 210, 223–24 (N.J. 2014). The NJCRA provides a right of

action for "[a]ny person who has been deprived of any substantive due process or equal protection rights, privileges, or immunities secured by the Constitution or laws of the United States" or the Constitution or laws of New Jersey, "or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law." N.J. Stat. Ann. § 10:6-2(c); *see Harris v. City of Newark*, 271 A.3d 1250, 1257 (N.J. 2022); *Perez v. Zagami, LLC*, 94 A.3d 869, 877 (N.J. 2014) (interpreting the NJCRA to accord with § 1983).

With both § 1983 claims and NJCRA claims, the "first step is to identify the exact contours of the underlying right said to have been violated" to determine whether the plaintiff has in fact alleged a violation of a right covered by these statutes. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998); *see Perez*, 94 A.3d at 877; *Endl v. New Jersey*, 5 F. Supp. 3d 689, 702–03 (D.N.J. 2014). Only if plaintiff has done so does the analysis proceed to the second step of determining whether the state actor defendant might be liable for that violation. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).

An individual defendant is liable for constitutional violations only if he had "personal involvement" in the alleged violations. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quotation marks omitted). To sufficiently allege a defendant's personal involvement, a plaintiff must "describ[e] the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Id*. Liability under § 1983 cannot be based on *respondeat superior*, but it can be imposed on "an official with final policymaking authority if that official establishes an unconstitutional policy that, when implemented, injures a plaintiff." *Id*. at 223. To adequately allege a municipality's liability, a plaintiff must allege that "a local government's policy or custom inflicted the injury in question." *Estate of Roman v. City of Newark*, 914 F.3d

789, 798 (3d Cir. 2019) (alterations omitted) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

The personal injury statute of limitations of the state in which a cause of action accrued governs actions brought under § 1983. *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). Thus, in New Jersey, § 1983 claims must be brought within two years after the cause of action accrued. *See* N.J.S.A. 2A:14–2; *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). This statute of limitations begins to run when "the plaintiff can file suit and obtain relief" or, in other words, "when the wrongful act or omission results in damages." *Wallace v. Kato*, 549 U.S. 384, 388, 391 (2007) (quotation marks omitted). Furthermore, pursuant to the doctrine of claim preclusion or *res judiciata*, a plaintiff cannot relitigate a claim against the same parties or their privies after a prior action ended in a valid final judgment on the merits. *Beasley v. Howard*, 14 F.4th 226, 232 (3d Cir. 2021).

### A. First Amendment Retaliation Claim (Count II)

In Count II, Plaintiff asserts a § 1983 claim for retaliation in violation of his First Amendment speech rights. (Compl. ¶¶ 145–52.) Specifically, he asserts that he had a "right to hold employment without infringement of the First Amendment right to freedom of speech," which was violated when Defendants retaliated against him in various ways for filing the 2017 lawsuit and the present lawsuit in federal court, and for appealing his termination decisions. (*Id*. ¶¶ 146–47.)

It is well established that a state actor may not "condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression" secured by the First Amendment's Free Speech Clause. *Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006) (quotation marks omitted); *see Pickering v. Bd. of Ed.*, 391 U.S. 563, 573 (1968); *De Ritis v.*

11

*McGarrigle*, 861 F.3d 444, 452 (3d Cir. 2017). A public employee asserting that he was retaliated against for exercising First Amendment free speech rights must allege facts showing that "(1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action." *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014). If these two elements are sufficiently alleged, then the burden shifts to the employer to demonstrate that "the same action would have been taken even if the speech had not occurred." *Id*.

Retaliatory actions are actionable only if they would "deter a person of ordinary firmness from exercising his First Amendment rights." *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000); *see Falco v. Zimmer*, 767 F. App'x 288, 310 (3d Cir. 2019). Retaliatory actions must generally be more than "criticism, false accusations, or verbal reprimands." *Brennan v. Norton*, 350 F.3d 399, 419 (3d. Cir. 2003). Where the alleged retaliatory act is a public official's speech, it must be more than defamatory; it amounts to actionable retaliation only if there was "a threat, coercion, or intimidation, intimating that punishment, sanction, or adverse regulatory action will follow." *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001) (quotation marks omitted); *see Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017). To demonstrate that a protected activity was a substantial or motivating factor in the retaliatory conduct, a plaintiff must show a "causal link" between the two, though the protected activity need not be the only, or even the primary, motivation for the retaliation. *Falco*, 767 F. App'x at 311 (quotation marks omitted); *Suppan*, 203 F.3d at 236.

Here, it is undisputed that Plaintiff engaged in protected First Amendment activity by filing his appeals and federal lawsuits. (D.E. 4-1 at 33.) *See Borough of Duryea. v. Guarnieri*, 564 U.S.

12

379, 387 (2011).[3]  However, he has not plausibly alleged that this protected activity was a substantial or motivating factor in any retaliatory action by Defendants that would chill an ordinary person's speech.

Plaintiff alleges that Defendants retaliated against him by disseminating statements about him that they knew to be false, delaying his full reinstatement to active duty, withholding his reinstatement to the City's health plans, withholding his back pay, requiring him to submit to physical and psychological exams as a precondition for his return to active duty, and—upon his return to work—giving him "demeaning" training and duties that were not commensurate with his years of experience.  (Compl. ¶ 148.)  The alleged defamatory statements by Defendant Labrosse and non-party Ehrenburg, without more, are not actionable retaliation because they were public officials and made no threats.  *See McLaughlin*, 271 F.3d at 573.  Defendants, like Plaintiff, have a right to express opinions and to seek review of the various termination decisions.  *See* U.S. Const. Amend. I; *Borough of Duryea*, 564 U.S. at 386.  While a factfinder might find the other conduct, taken together, to be sufficient to deter an ordinary person from exercising First Amendment rights, the Complaint fails to sufficiently allege a causal link between these alleged retaliatory acts and his First Amendment activity.  Accepting the narrative set out in the Complaint as true, there is nothing suggesting that the City retaliated against Plaintiff for his legal actions rather than for the underlying 64 Prospect investigation for which they sought his termination and which they continue to believe warranted his termination.

---

[3] This case seems to concern Plaintiff's First Amendment right to "petition the [g]overnment for a redress of grievances" more than his right to speech, but this Court finds his actions to constitute protected speech as well.  U.S. Const. Amend. I; *see Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011) (acknowledging the "substantial" overlap between these rights and stating that a Petition Clause claim could have been brought as a Speech Clause claim based on "the speech contained within [a plaintiff's] grievances and lawsuit").

Plaintiff also fails to sufficiently allege the personal involvement of several individual defendants in these alleged wrongs and fails to allege grounds for the City's liability. *Chavarriaga*, 806 F.3d at 223.  The Complaint gives no indication that defendants Sims, Canestrino, Battaglia, or Von Rudenborg were involved in any of these actions.  They are faulted for failing to correct or retract defamatory statements by Defendant Mayor Labrosse and non-party Ehrenburg, but those statements are not actionable retaliation, so neither is a third party's failure to correct them. (Compl. ¶¶ 87, 150.)  *See McLaughlin*, 271 F.3d at 573.  While Plaintiff does allege some direct involvement by Defendants Labrosse and Caruso, many of the Complaint's key allegations state that "Defendants" took actions without specifying who did what, which is insufficient to state a claim. (*See, e.g.*, Compl. ¶¶ 83, 85, 125.)[4]  As for the City's liability, Plaintiff has not sufficiently alleged that his injuries were caused by a City policy or custom.  He alleges that he was mistreated in various ways that were *contrary* to custom and to how the City treated other officers. (Compl. ¶¶ 89, 119, 121.)  And while he alleges that some mistreatment was based on a City custom of retaliation, he provides insufficient factual support for these conclusory statements. (Compl. ¶¶ 151, 160, 169.)  *See Estate of Roman*, 914 F.3d at 798 (stating that a custom is established by showing that "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law").

Finally, it appears that many of Plaintiff's claims are barred by claim preclusion and the two-year statute of limitations.  Plaintiff previously brought First Amendment retaliation claims against the City and several individual defendants—including Busciglio and Ehrenburg—alleging retaliation for filing the 2017 lawsuit.  *See* D.N.J. 17-cv-2308; *Duardo*, 2022 WL 10487207.

---

[4] A complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and alterations omitted); *see Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[A] civil rights complaint is adequate where it states the conduct, time, place, and persons responsible.")

14

Although Plaintiff consented to the dismissal of his retaliation claim against the City so that no judgment was reached on the merits, Judge Martini dismissed Plaintiff's claim against the individual defendants on the merits, and Plaintiff cannot now relitigate that claim by alleging that the Defendants in this case retaliated against him for filing the 2017 lawsuit by acquiescing in the conduct of those individuals. *See Duardo*, 2022 WL 10487207 at \*\*10–17; *Beasley*, 14 F.4th at 232. Moreover, many of Plaintiff's claims are untimely, as he seeks redress for wrongs that injured him more than two years before he filed his Complaint on November 28, 2022. *See* N.J.S.A. 2A:14–2; *Wallace*, 549 U.S. at 391. These time-barred claims include Defendants' failure to reinstate Plaintiff to active duty and to otherwise comply with the CSC's final administrative decision issued in April 2019, and Defendants' defamatory statements made prior to November 2020. (*See* Compl. ¶¶ 49, 54–55, 58–90; 148.)[5]

For all of these reasons, this Court will dismiss Plaintiff's First Amendment retaliation claim in Count II of the Complaint without prejudice, except insofar as it is barred by claim preclusion and the statute of limitations.

### B.   Fourteenth Amendment Property Claim (Count III)

In Count III, Plaintiff asserts a § 1983 claim for deprivation of property without due process of law in violation of the Fourteenth Amendment. (Compl. ¶¶ 153–61.) Specifically, he asserts

---

[5] This Court is unpersuaded by Plaintiff's argument that the statute of limitations should be tolled pursuant to the continuing violations doctrine. (D.E. 5 at 17–18.) He alleges that Defendants' defamatory statements and their failure to comply with the April 2019 order caused him immediate financial harm, so his claims accrued at the time he knew of that injury. (Compl. ¶¶ 80, 85, 87–88.) *See Wallace*, 549 U.S. at 391; *Coello v. DiLeo*, 43 F.4th 346, 352 (3d Cir. 2022); *Arezzo v. City of Hoboken*, 719 F. App'x 115, 118 (3d Cir. 2018). In determining whether there was a continuing violation, the focus is on "affirmative acts of the defendants" and not the "continual ill effects from an original violation," so the fact that Plaintiff continued to suffer harm in the time period following these alleged violations is insufficient to toll the statute of limitations. *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005) (quotation marks omitted).

that he had a property interest in his back pay, which Defendants were ordered to pay him since June 2009 but refused to until after his Complaint was filed. (*Id*. ¶¶ 155–58.)[6]

This claim must be dismissed as untimely. Pursuant to the applicable statute of limitations, Plaintiff had to bring this claim within two years of when the cause of action accrued. *See* N.J.S.A. 2A:14–2; *Dique*, 603 F.3d at 185. Here, the CSC ordered Defendants to pay Plaintiff back pay on April 8, 2019, so the statute of limitations began to run on that date, if not earlier. (Compl. ¶ 54.) *See Wallace*, 549 U.S. at 391; *Arezzo v. City of Hoboken*, 719 F. App'x 115, 118 (3d Cir. 2018) (holding that a § 1983 due process claim accrued "at the latest" once the CSC issued its final administrative decision).[7] However, Plaintiff did not file his Complaint until November 28, 2022, approximately a year and a half after the statute of limitations had run on April 8, 2021.

Accordingly, this Court will dismiss Plaintiff's Fourteenth Amendment claim in Count III of the Complaint with prejudice.

### C. Fourteenth Amendment and State Law Liberty Claims (Counts I and IV)

In Counts I and IV, Plaintiff asserts that he was deprived of liberty interests in his reputation arising under the U.S. and New Jersey Constitutions without due process of law. (Compl. ¶¶ 136–44, 153–61.) However, he makes no argument concerning Counts I and IV in his opposition to the motion to dismiss, and has consented to the dismissal of his "liberty interest claims," which this Court construes as consent to the dismissal of Counts I and IV. (D.E. 5 at 18.)[8]

---

[6] This date does not match the allegations earlier in the Complaint, and Plaintiff's opposition to the motion to dismiss states that he was entitled to back pay beginning in February 2019, when the OAL decision was issued. (*See* Compl. ¶ 52; D.E. 5 at 6–7.)

[7] Plaintiff himself emphasizes that this claim accrued in 2019, stating that he "was deprived of his back pay for nearly *4 years* [and] had a protected property interest in his back pay immediately following the entry of the [OAL]'s February 2019 order." (D.E. 5 at 6–7.)

[8] In any event, the violation of procedural due process in Count I is not cognizable under the NJCRA because, unlike § 1983, the NJCRA addresses only deprivations of "*substantive* rights, privileges or immunities secured by the Constitution or laws" of New Jersey. N.J.S.A. 10:6-2(c) (emphasis added); *see Tumpson v. Farina*, 218 N.J. 450, 477

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**, Counts I and IV of the Complaint are **DISMISSED WITH PREJUDICE** on consent, Count III is **DISMISSED WITH PREJUDICE** as barred by the statute of limitations, and Count II is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim, except insofar as it is barred by the statute of limitations and claim preclusion.  Plaintiff may file an Amended Complaint within 30 days of the date of this opinion.  An appropriate order follows.

      /s/ Susan D. Wigenton
      **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
        José R. Almonte, U.S.M.J.

---

(2014) ("Section 1983 provides remedies for the deprivation of both procedural and substantive rights while [the NJCRA] provides remedies only for the violation of substantive rights.").